UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

SAMUEL R. MOORE, JR. and
CAROLYN A. MOORE,

      Plaintiffs,

v.                                                                                          Case No. 1:04-CV-800

CYCON ENTERPRISES, INC.,                                       HON. GORDON J. QUIST

      Defendant and
      Third-Party Plaintiff.

v.

B & P GROUP, INC.,

      Third-Party Defendant.
_____/

## OPINION

### I. Background

Pursuant to an Order and an Opinion dated August 14, 2006, and August 16, 2006, respectively, the Court granted Plaintiffs' motion for partial summary judgment, denied Defendant Cycon Enterprises, Inc.'s ("Cycon"), motion for summary judgment, and granted Third-Party Defendant B & P Group, Inc.'s motion for summary judgment. Specifically, as between Plaintiffs and Cycon, the Court held that the transaction between Plaintiffs and Cycon was a mortgage loan pursuant to the equitable mortgage doctrine and that, in connection with the transaction, Cycon violated the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601, *et seq.*, the Home Ownership and Equity Protection Act of 1994 ("HOEPA"), 15 U.S.C. §§ 1602(aa) and 1639, and Michigan's Usury Statute, M.C.L.A. § 438.31, *et seq.*

Presently before the Court are the parties' cross motions for summary judgment regarding damages and equitable relief. The Court has read the parties' briefs, is fully informed of the facts, and concludes that oral argument is unnecessary to assist the Court in deciding the instant motions. The relevant facts regarding the transaction are set forth in the prior Opinion and will not be recounted herein, except as may be necessary to the Court's analysis.

## II. Issues Presented

The Court begins by pointing out what issues are not in dispute. First, Cycon agrees that Plaintiffs are entitled to an award of statutory damages in the amount of $2,000 pursuant to 15 U.S.C. § 1640(a)(2)(A)(iii) based upon Cycon's failure to provide the required TILA disclosures.[1] (Def.'s Br. at 12.) Second, Cycon does not dispute that the Moores gave timely notice of their election to rescind their loan transaction with Cycon. Finally, Plaintiffs have abandoned their claim under the Michigan Credit Services Protection Act.

The issues that the Court must decide are as follows: (1) whether Plaintiffs must tender $190,262.15, the amount that Cycon paid to Wells Fargo Bank to pay off Plaintiffs' existing mortgage, or $215,500, which includes the payoff amount to Wells Fargo Bank plus the $25,237.85 that Cycon paid to Romar Financial/Peltz and B & P on Plaintiffs' behalf; (2) whether Plaintiffs are entitled to an additional award of statutory damages in the amount of $2,000 based upon Cycon's failure to properly respond to Plaintiffs' rescission notice; (3) whether the credit to which Plaintiffs are entitled for prior rent payments to Cycon is $10,858.66, as Plaintiffs claim, or $6,706.66, as

---

[1] The Court notes that Cycon couches its concession of this issue in terms of an assumption – a loan, rather than a sale – in light of the Court's previous determination that the transaction was in fact an equitable mortgage. Although Cycon continues to adhere to its position that the transaction was a sale and leaseback transaction, the Court understands that Cycon is not waiving any argument that it might have on appeal by conceding the TILA violation under the Court's holding.

2

Cycon claims; (4) whether Cycon has presented sufficient evidence that it paid $2,452.48 to insure the property, in addition to paying property taxes in the amount of $4009.79, which figure is not in dispute; and (5) the terms of the relief that the Court should grant in order to effectuate the rescission. Although the parties have raised the issue of attorneys fees and costs, the Court must defer any ruling on that issue because Plaintiffs have yet to submit an application for such an award, supported by appropriate billing records.

### III.  Analysis

**A.    The Principal Amount Of The Loan Which Plaintiffs Must Repay To Cycon**

Pursuant to 15 U.S.C. § 1635(a), a consumer-borrower in a credit transaction "in which a security interest, including any such interest arising by operation of law, is or will be retained or acquired in any property which is used as the principal dwelling of the [consumer-borrower]" is granted the right to rescind the transaction until the third business day following the consummation of the transaction or the delivery of the disclosures required by the TILA (for a period of three years), whichever is later. *See* 15 U.S.C. §§ 1635(a), (f). In this case, Plaintiffs' right of rescission continued until they sent Cycon their notice of rescission to Cycon on September 24, 2004, because Cycon never provided the required disclosures to Plaintiffs.

The procedure for the return of money or property upon a consumer's exercise of his or her right to rescind the transaction is set forth in § 1635(b), which provides:

> When an obligor exercises his right to rescind under subsection (a), he is not liable for any finance or other charge, and any security interest given by the obligor, including any such interest arising by operation of law, becomes void upon such a rescission. Within 20 days after receipt of a notice of rescission, the creditor shall return to the obligor any money or property given as earnest money, downpayment, or otherwise, and shall take any action necessary or appropriate to reflect the termination of any security interest created under the transaction. If the creditor has delivered any property to the obligor, the obligor may retain possession of it. Upon

3

> the performance of the creditor's obligations under this section, the obligor shall tender the property to the creditor, except that if return of the property in kind would be impracticable or inequitable, the obligor shall tender its reasonable value. Tender shall be made at the location of the property or at the residence of the obligor, at the option of the obligor. If the creditor does not take possession of the property within 20 days after tender by the obligor, ownership of the property vests in the obligor without obligation on his part to pay for it. The procedures prescribed by this subsection shall apply except when otherwise ordered by a court.

Although § 1635(b) specifies that the consumer's obligation to tender the property arises only after the creditor has performed its obligations of taking steps to terminate its security interest and returning any money or property given as a downpayment or earnest money, many courts, including the Sixth Circuit, have recognized that the express language of § 1635(b), as well as equitable principles, permit a court to modify those procedures to condition the lender's obligations upon the borrower's tender of the amount due to the lender. *See Rudisell v. Fifth Third Bank*, 622 F.2d 243, 254 (6th Cir. 1980) ("Since rescission is an equitable remedy, the court may condition the return of monies to the debtor upon the return of the property to the creditor"); *Decision One Mortgage Co. v. Fraley*, No. 00-3270, 2000 WL 1889700, at *2 (6th Cir. Dec. 19, 2000) (noting that "[t]he court has equitable powers to condition a grant of rescission on a borrower's tender of the net loan principal received"); *Yamamoto v. Bank of N.Y.*, 329 F.3d 1167, 1171 (9th Cir. 2003) (stating "whether a decree of rescission should be conditional depends upon 'the equities present in a particular case, as well as consideration of the legislative policy of full disclosure that underlies the Truth in Lending Act and the remedial-penal nature of the private enforcement provisions of the Act'") (quoting *Palmer v. Wilson*, 502 F.2d 860, 862 (9th Cir. 1974)); *Ramirez v. Household Fin. Corp.* (*In re Ramirez*), 329 B.R. 727, 738 (D. Kan. 2005) (rejecting the debtors' argument that courts may not modify the procedures for rescission under the TILA, because "[t]he TILA's statutory

rescission procedures do not alter the equitable nature of the rescission remedy, nor the goal of returning the parties most nearly to the position they held prior to entering into the transaction").

Plaintiffs do not suggest that the Court is not authorized to condition rescission upon their tender of the loan proceeds to Cycon and, in fact, they acknowledge that this would be an appropriate procedure when they assert, as part of their proposed equitable relief, that Cycon would have the option to foreclosure on its equitable mortgage in the event that Plaintiffs are unable to either obtain financing or sell the property. The issue regarding § 1635(b), however, is the amount Plaintiffs must tender to Cycon in order to be entitled to rescission. Plaintiffs contend that the amount they owe (exclusive of other deductions) is $190,262.15 – the amount Cycon paid to Wells Fargo Bank to pay off the existing mortgage in foreclosure. Plaintiffs contend that they are not required to repay the additional $25,237.85, $13,280 of which was paid to B & P as a "Loan Origination Fee" and an "Underwriting Fee," and the remaining balance of $9,420 which was paid to Romar Financial (Peltz) as an "Additional Settlement Charge." Cycon, on the other hand, contends that the principal amount of the loan that Plaintiffs must repay is $215,500 – the total amount that Cycon advanced to Plaintiffs.

As set forth in full above, the procedures under the TILA for rescinding a credit transaction state: "When an obligor exercises his right to rescind under subsection (a), he is not liable for any finance or other charge . . . ." 15 U.S.C. § 1635(b). The Federal Reserve Board's implementing regulation, Regulation Z, 12 C.F.R. § 226, states that "[w]hen a consumer rescinds a transaction, the security interest giving rise to the right of rescission becomes void, and *the consumer shall not be liable for any amount, including any finance charge*." 12 C.F.R. § 226.15(d)(1) (italics added). The

applicable Official Staff Commentary further discusses the consumer's liability for finance or other charges relating to the transaction:

> 1. *Refunds to consumer.* The consumer cannot be required to pay any amount in the form of money or property either to the creditor or a third party as part of the occurrence subject to the right of rescission. Any amounts of this nature already paid by the consumer must be refunded. "Any amount" includes finance charges already accrued, as well as other charges such as broker fees, application and commitment fees, or fees for a title search or appraisal, whether paid to the creditor, paid by the consumer directly to a third party, or passed on from the creditor to the third party. It is irrelevant that these amounts may not represent profit to the creditor.

Federal Reserve Board, Official Staff Commentary § 226.15(d)(2)-1. The statute, regulation, and Official Commentary establish that the consumer is not liable for *any* fees or charges relating to the rescinded transaction, such as finance charges or broker fees. *See Mayfield v. Vanguard Savs. & Loan Ass'n*, 710 F. Supp. 143, 148 (E.D. Pa. 1989). Thus, as properly applied in this case, the TILA relieves Plaintiffs of any obligation to repay, as a condition to the right of rescission, the loan origination fee, the underwriting fee, and the settlement charge paid to B & P and Romar/Peltz.

Cycon argues that the Official Staff Commentary, when read as a whole, establishes that the consumer is not liable for fees in connection with the loan only if the consumer pays the fees out of his own pocket. In other words, according to Cycon, if the consumer pays such fees with money provided by the creditor, then the consumer must repay those funds to the creditor. As support, Cycon cites the following statement from the Commentary: "the term *any amount* does not apply to money or property given by the creditor to the consumer; those amounts must be tendered by the consumer to the creditor under § 226.15(d)(3)."[2] Federal Reserve Board, Official Staff Commentary § 226.15(d)(2)-2. Cycon asserts that because Plaintiffs used moneys that they obtained from Cycon

---

[2]Section 226.15(d)(3) pertains to the consumer's obligation to tender money or property to the creditor as a condition of rescission. *See* 12 C.F.R. § 226.15(d)(3).

6

to pay Romar/Peltz and B & P, rather than using their own funds to pay those fees, Plaintiffs must repay those amounts to Cycon pursuant to 12 C.F.R. § 226.15(d)(3).

The Court rejects Cycon's argument for several reasons. First, the statute, the regulation, and the Official Commentary all make clear in unequivocal terms that the consumer is not liable for any amount that may be charged as part of the transaction. There is no exception for fees financed by the lender, as illustrated by *Mayfield v. Vanguard Savings & Loan Association*, 710 F. Supp. 143 (E.D. Pa. 1989), a case cited by Cycon. In *Mayfield*, the court held as part of its determination of the plaintiff's repayment obligation, that the plaintiff was not liable for the finance charge or any of the other charges relating to the transaction which were included in the loan amount, as in this case. *See id.* at 148. The court distinguished such charges from other amounts the plaintiff was liable to repay, for which the creditor made advances on behalf of the plaintiff, such as prior mortgages and water and sewer bills, on the basis that such charges did not relate to the credit transaction itself. The court observed that "[t]he money advanced to discharge plaintiff's indebtedness on the two preexisting mortgages and for the water and sewer bills was as surely delivered to plaintiff as if defendant had delivered such amounts payable to plaintiff and plaintiff, in turn, had endorsed it over to pay her bills." *Id.* Here, the payments to B & P and Romar/Peltz are not comparable to the preexisting mortgages and water and sewer bills in *Mayfield* because they did not exist prior to the loan; they arose in connection with the loan. Second, Cycon's interpretation would be at odds with the purpose of rescission, which is to return the parties to the status quo that existed before the loan. *See Rudisell*, 622 F.2d at 253 ("Congress intended the rescission to absolutely void the transaction and return the debtor to the status quo existing before he started the transaction, even against third party purchasers."). That is, under Cycon's approach, Plaintiffs would not be returned to the status

7

quo, but rather, would have an additional indebtedness of $25,237.85 for the fees paid to B & P and Romar/Peltz. Cycon's argument would thus reward the wrongdoer. Stated differently, why should Plaintiffs pay for their own fleecing? Finally, contrary to Cycon's assertion, Cycon did not deliver any of the $25,237.85 to Plaintiffs. Rather, Cycon provided the funds to the title company, and the title company disbursed the amounts to B & P and Romar/Peltz. Thus, although the settlement statement indicates that those funds were "paid from [Plaintiffs] funds," there is no evidence that Plaintiffs ever possessed those funds. *Cf. FDIC v. Martinez*, No. C-3-93-429, 1997 WL 1764757, at *3 (S.D. Ohio June 12, 1997) (holding that all fees related to the transaction were deductible from the consumer's equitable tender amount even though some of the fees were passed on to third parties, because the closing statement showed that all of the fees were paid from the borrower's funds at settlement).

Cycon also makes two other arguments, neither of which is persuasive. First, it argues that the amounts paid to B & P and Romar/Peltz are not finance charges under TILA and Regulation Z because Cycon did not require Plaintiffs to use B & P or Romar/Peltz. Second, Cycon argues that accepting Plaintiffs' argument that they are only required to repay the amount of the mortgage payoff, $190,262.15, would lead to an absurd result based upon the Court's prior award of summary judgment to Plaintiffs on their HOEPA claim. With regard to Cycon's first argument, even accepting as true for the sake of argument Cycon's premise that neither payment to B & P and Romar/Peltz was a finance charge, Cycon's argument fails because a consumer is relieved not only from paying finance charges, but from "any amount . . . as part of the occurrence subject to the right of rescission." Federal Reserve Board, Official Staff Commentary § 226.15(d)(2)-1. *See also* 15 U.S.C. § 1635(b) (stating that "an obligor . . . is not liable for any finance *or other charge*")

(emphasis added); 12 C.F.R. §116.15(d)(1) (stating that "the consumer shall not be liable for *any amount*, including any finance charge") (emphasis added). Cycon's HOEPA argument is difficult to follow, but, as the Court understands it, is basically that if the loan was in fact a "high cost" loan within the meaning of HOEPA, then Plaintiffs must have paid the $25,430.10 to B & P and Romar/Peltz with funds that Cycon "loaned" to them, and therefore, Plaintiffs must repay the $25,237.85 advanced by Cycon. This is simply a reiteration of Cycon's central, but incorrect, theme that a consumer is not liable for charges in connection with the transaction at issue only if the consumer paid the fees with his own funds. As set forth above, Plaintiffs paid the fees to B & P and Romar/Peltz with funds that Cycon loaned them, and such fees were incurred in connection with the loan at issue. There is no reason why these facts could not also support a HOEPA claim.

**B.      Additional Award Of Statutory Damages**

Plaintiffs contend that they are entitled to an additional award of statutory damages because Cycon failed to respond properly to Plaintiffs' rescission notice by terminating its security interest in the property, i.e., by reconveying the property to Plaintiffs, within 20 days after receipt of the notice as required by 15 U.S.C. § 1635(b). As support for their request, Plaintiffs cite several cases, including *Gerasta v. Hibernia National Bank*, 575 F.2d 580, 583 (5th Cir. 1978), *Jackson v. US Bank National Association Trustee* (*In re Jackson*), 245 B.R. 23 (Bkrtcy. E.D. Pa. 2000), and *Murray v. First National Bank of Chicago* (*In re Murray*), 239 B.R. 728 (Bkrtcy. E.D. Pa. 1999), all of which recognized that a consumer is entitled to a separate award of statutory damages under 15 U.S.C. § 1640(a) based upon a creditor's failure to respond to a valid notice of rescission.

Cycon disputes that Plaintiffs are entitled to an award for Cycon's violation of § 1635(b) because, it notes, the last sentence of § 1635(b) ("The procedures prescribed by this subsection shall

9

apply except when otherwise ordered by a court.") gives a court discretion to determine the order of events for a rescission. Citing *Yamamoto v. Bank of New York*, 329 F.3d 1167 (9th Cir. 2003), Cycon further notes that a rescission occurs under § 1635(b) either when the creditor acknowledges the consumer's right to rescind or, in a contested case, such as this, when a court determines that the consumer is entitled to rescission. Cycon thus argues that because Cycon disputed Plaintiffs' right to rescind, Plaintiffs had no right to rescind until this Court determined that they were entitled to such relief and until this Court specifies the sequence of the rescission.

The Court will award an additional $2,000 in statutory damages based upon Cycon's failure to respond to Plaintiffs' notice of rescission. Cycon's reliance upon *Yamamoto* and the other cases cited in its brief is misplaced. The issue in *Yamamoto* was whether a court could order plaintiffs who sought rescission to demonstrate that they could tender the loan proceeds if they prevailed on their claim for rescission. *See id.* at 1168. The district court did exactly that, and when the plaintiffs were unable to demonstrate that they could do so, it entered judgment for the lender. *See id.* at 1169. In affirming the district court, the Ninth Circuit noted that TILA gives a court discretion to condition rescission upon the borrower's tender of property to the lender and that a borrower's notice of rescission does not automatically result in the voiding of the lender's security interest. *Id.* at 1171-72. It held that in cases where the creditor acknowledges the consumer's right to rescind, the transaction is rescinded automatically, the security interest becomes void, and the sequence of events set forth in § 1635(b) and § 226.23 of Regulation Z is triggered. *Id.* at 1172. The court went on to hold, however, that where the lender contests the right to rescind, the lender's security interest becomes void when there is a determination that the borrower has the right to rescind. *See id. Yamamoto* did not address the propriety of an award of statutory damages for failing to respond to

10

a demand for rescission; rather, it involved the procedural operation of the rescissionary relief provided under TILA.[3] Cycon has failed to cite any applicable authority to support its argument that an award of statutory damages for the rescission violation is not warranted in this case, and one case cited by Cycon, *Reynolds v. D & N Bank*, 792 F. Supp. 1035 (E.D. Mich. 1992), actually goes against Cycon's position, as the court awarded statutory damages for the defendant's violation of § 1635.

C.  **Plaintiffs' Credit For Rent Payments**

The parties agree that the principal amount of the loan must be reduced by the amount of rent that Plaintiffs paid to Cycon. The dispute is over the amount. Plaintiffs have presented an affidavit from Plaintiff Samuel R. Moore, Jr., who states that he paid Cycon or its affiliates (Cycon Enterprises Profit Sharing Plan, Howard "Buddy" Windham, and L & B Investors LLC) a total of $10,858.66 from June 2003, to September 2003. (Moore Aff. ¶ 10.) Moore states that the payments consisted of the following: (1) payment by check on 6/11/03 to Cycon of $1,676.66; (2) payments by check on 6/26/03 and 7/24/03 to Cycon Enterprises Profit Sharing Plan of 2,515 each; (3) payments by check to L & B investors LLC on 7/31/03 and 9/8/03 of $1,120 and $517, respectively; and (4) a payment to Windham of $2,515, consisting of a cashier's check in the amount of $1,124, a "Section Eight" check endorsed to Cycon, and cash. (*Id.* ¶¶ 4, 5.)

Cycon contends that Plaintiffs only paid $6,706.66 in rent, consisting of a pro-rated payment of $1,676.66 for June 2003, and two payments of $2,515 for July and August 2003. As support, Cycon cites the March 28, 2006, Windham affidavit submitted in connection with Cycon's previous motion for summary judgment, in which Windham states: "Plaintiffs paid Cycon rent for June, July

---

[3] In fact, the district court held that the plaintiffs' damage claims were barred by TILA's one-year statute of limitations, and the plaintiffs did not seek review of that issue on appeal.

and August, 2003; however, Plaintiffs have not paid Cycon a dime in rent since August 2003." (Windham 3/28/06 Aff. ¶ 4.) Cycon also cites Moore's deposition testimony, in which he stated, "I made two and a half payments. Because we closed in June, and I sent him a check for 1,600, if I'm not mistaken, for the remainder of June." (Moore Dep. at 146.) Moore further confirmed that it was "correct" that he paid for the remainder of June, July and August 2003, and that he made no further payments to Cycon from September 2003 through the present. (*Id.*) Cycon argues that pursuant to *Reid v. Sears, Roebuck & Co.*, 790 F.2d 453 (6th Cir. 1986), in which the Sixth Circuit held that a party may not attempt to create a genuine issue of material fact by filing an affidavit that contradicts his prior deposition testimony, Plaintiffs are bound by Moore's prior deposition testimony and may not rely on his subsequent affidavit. Plaintiffs respond that *Reid* does not apply because Moore only referred to payments that he made to "Cycon" in his deposition, whereas his affidavit speaks about payments made to Windham and Cycon's related entities.

Contrary to Plaintiffs' assertion, pursuant to *Reid*, they are bound by Moore's prior deposition testimony and may not attempt to create a genuine issue of fact through his subsequent affidavit. A review of the deposition transcript reveals that Cycon's counsel was questioning Moore about the monthly payments of $2,515 that Plaintiffs made to Cycon pursuant to the lease. Because Cycon was the party to the lease, it would make sense that the questions were limited to payments made to Cycon. Moreover, the issue was the rent payments that Plaintiffs had made, and Moore had the opportunity to identify all rent payments that he had made. A review of the copies of the checks attached to Moore's affidavit confirms that Moore's deposition testimony was accurate. The first three checks, dated 6/11/03 ($1,676.66), 6/26/03 ($2,515), and 7/24/03 ($2,515), correspond to Moore's prior testimony and Windham's affidavit that Plaintiffs made rent payments to Cycon for

June, July, and August 2003. Because the 7/24/03 check was for the August rent, it makes no sense that Plaintiffs would give L & B Investors a check for $1,120, with the notation "paid in full," only one week later, that was for rent that had already been paid. In fact, the other check made payable to L & B Investors in the amount of $517 and dated 9/8/03 contains the notation that it was "for taxes." For similar reasons, Moore's testimony in his new affidavit regarding the alleged August 25, 2003 payment to Cycon is also an improper attempt to contradict his prior deposition testimony. Accordingly, Plaintiffs are entitled to a credit of $6,706.66 for the rent that they paid to Cycon.

**D.     Cycon's Claim For Property Taxes And Insurance**

In its prior opinion, the Court held that Cycon was entitled to recover from Plaintiffs the amounts that it has paid for property taxes and insurance on the property. Cycon has presented evidence that it paid $4,009.79 for property taxes and $2,452.48 to insure the property. (Windham 3/28/06 Aff. ¶ 5.) Plaintiffs state that they have verified the amount of the property taxes that Cycon paid to the Muskegon County Treasurer and do not dispute the amount claimed. However, they state that Cycon has failed to provide any documentation regarding the payment of insurance. Plaintiffs therefore suggest that Cycon should be required to provide Plaintiffs with a copy of any insurance policy along with proof of payment of premiums before the charges are assessed against them.

Although submission of the actual insurance policy and payment records would be the most conclusive proof that Cycon actually obtained and paid for an insurance policy, Plaintiffs cite no case law which suggests that a party may not establish such facts through an affidavit from a witness with personal knowledge of the party's business records and operations. *See, e.g.*, *Stenger v. World Harvest Church, Inc.*, No. Civ. A. 1:04CV00151-RW, 2006 WL 870310, at *12 (N.D.Ga. Mar. 31, 2006) (holding that personal knowledge sufficient to support an affiant's statements may be gleaned

13

from a review of records pertinent to a particular case). In any event, because the instant motion is a motion for summary judgment, Plaintiffs have the burden of presenting some evidence to create a genuine issue of material fact regarding Cycon's insurance payments. *See* Fed. R. Civ. P. 56(c). Because they have failed to do so, the Court concludes that Cycon is entitled to credit for $2,452.48 in insurance payments. The amounts paid for property taxes and insurance will be added to Plaintiffs' tender obligation.

**E.     Procedure For Effectuating The Rescission**

In accordance with the foregoing determinations, the amount which Plaintiffs must tender to Cycon is as follows:

| | |
|---|---|
| Principal Amount | $190, 262.15 |
| Statutory Damages ($2000 x2) | -  $4,000.00 |
| Prior Rent Credit | -  $6,706.66 |
| Cycon Award for Taxes and Insurance | +  $6,462.27 |
| Tender Amount | $186,017.76 |

The Court must next determine the appropriate terms of equitable relief. Plaintiffs suggest that the Court allow them a period of 120 days from the final order to allow them to obtain financing, and if they are unable to obtain financing within that time, that the Court allow them two years from the date of the final order in which to sell their property. Interest would accrue in favor of Cycon beginning on the 121st day at the rate of 7% per annum. If Plaintiffs are unable to sell their property within that time, Cycon would have the option to foreclose on its equitable mortgage. If Cycon files an appeal, the dates Plaintiffs propose would not begin to run until after the appeal is concluded.

Cycon, noting that Plaintiffs have already lived on the property for over three years without paying Cycon anything, contends that Plaintiffs' proposal, which would allow Plaintiffs to live on

the property for at least another two years for free before Cycon could even initiate a foreclosure proceeding, is much too generous. Instead, Cycon proposes that Plaintiffs should be permitted 90 days in which to refinance the property, sell it, or find some other way to repay Cycon the remaining balance of $186,017.76. Cycon contends that it should be given clear title to the property if Plaintiffs cannot sell or refinance the property within that time.

The Court concludes that the most equitable procedure lies somewhere in between what both parties want. First, because the Court has concluded that Cycon holds an equitable mortgage on Plaintiffs' property, it will order Cycon to reconvey the property to Plaintiffs and to record the order that will issue pursuant to this Opinion with the Muskegon County Register of Deeds in order to perfect its equitable mortgage. This will remove a potential obstacle to Plaintiffs' efforts to refinance or sell the property. Second, in light of the purpose of rescission – to restore the parties to the status quo – the Court finds it most appropriate to place the parties in the same posture that they were in at the time of the loan. That is, Plaintiffs were already in the redemption period and were in need of financing. When Plaintiffs obtained the loan on June 11, 2003, less than two months remained until the expiration of the redemption period on August 7, 2003. Therefore, restoring the parties to the status quo would mean that Plaintiffs should be allowed approximately two months in which to either obtain financing or to sell the property. Because Cycon has suggested a period of 90 days, the Court will use this more generous period. While Plaintiffs may claim that this time is too short, three points show why this period is reasonable: (1) As Cycon is quick to note, Plaintiffs have lived in their house for over three years without making any payment to Cycon, and it would be unfair to make Cycon to wait much longer in order to recover the loan proceeds from Plaintiffs. (2) Plaintiffs should have known by August 14, 2006, when the Court issued its Order determining that Cycon had

an equitable mortgage in the property, but in any event, by no later than September 25, 2006, when Plaintiffs filed their instant motion for summary judgment, that they would need to either find replacement financing or sell the property. Thus, Plaintiffs should have used that time at least to begin looking for financing. (3) Finally, Plaintiffs would not have had any period of time in which to sell their house (beyond the redemption period) had they not entered into the transaction with Cycon, and there is no reason why they should be allowed such a period merely because of Cycon's TILA and HOEPA violations, which have been addressed through appropriate damage awards. Therefore, Plaintiffs will be allowed a period of 90 days from the date of the final order to secure refinancing, sell the property, or find some other way to repay the loan balance. Cycon will be entitled to interest on the loan amount, commencing on the date of the final order, at the rate of seven percent (7%) per annum, payable monthly, with the first payment due 30 days after entry of the final order. If Plaintiffs fail to obtain refinancing or to sell the property within 90 days, Cycon may foreclose on its equitable mortgage. The 90-day period until foreclosure will commence at the conclusion of the appeal period or any appeal, should Cycon elect to file a notice of appeal. However, Plaintiffs' obligation to pay Cycon interest shall continue during any appeal. Failure to pay interest when due shall give Cycon the right to accelerate the foreclosure of the property.

### IV. Conclusion

For the foregoing reasons, the Court will grant Plaintiffs' motion for summary judgment in part and deny it in part. The Court will also grant Cycon's motion for summary judgment in part and deny it in part. In sum, Plaintiffs' equitable repayment obligation is $186,017.76. Plaintiffs will have 90 days from the date of entry of the Court's final order, to be issued concurrently with this Opinion, to obtain refinancing, sell the property, or otherwise pay Cycon the repayment amount. If

Plaintiffs fail to tender such amount within that time, Cycon may foreclose on its equitable mortgage. Interest must be paid on the $186,017.76 at the rate of seven percent (7%) per annum from the date of the final order, payable monthly commencing thirty (30) days from the entry of the final order. Failure to pay interest when due shall give Cycon the right to accelerate foreclosure on the property.

An Order consistent with this Opinion will be entered.


Dated: February 9, 2007                                    /s/ Gordon J. Quist
                                                           GORDON J. QUIST
                                                     UNITED STATES DISTRICT JUDGE