UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

SAMUEL R. MOORE, JR. and
CAROLYN A. MOORE,

        Plaintiffs,

v.                                        Case No. 1:04-CV-800

CYCON ENTERPRISES, INC.,               HON. GORDON J. QUIST

        Defendant and
        Third-Party Plaintiff.

v.

B & P GROUP, INC.,

        Third-Party Defendant.
_____/

## OPINION

      The Court has before it Plaintiffs' motion for an award of costs/expenses and attorney fees pursuant to the Truth in Lending Act ("TILA"), 15 U.S.C. § 1640(a)(3), and the Michigan Usury Statute, M.C.L.A. § 438.32. Defendant, Cycon Enterprises, Inc. ("Cycon") has filed a response in which it does not dispute that Plaintiffs are entitled to recover attorney fees under the applicable statutes, but it does take issue with Plaintiffs' counsel's hourly rate and fees for certain work.

### I. Background and Procedural History

      Because the underlying facts are fully set forth in the Court's prior opinions in this case, there is no need to recount them in detail here. However, to the extent pertinent to its analysis, the Court will briefly describe the nature and procedural history of the case.

Plaintiffs, Samuel R. Moore, Jr. and Carolyn A. Moore (the "Moores"), filed their complaint in this case on November 30, 2004, against Cycon and several other Defendants, including B & P Group, Inc. ("B & P"), Romar Financial, L.L.C. ("Romar"), Ronald A. Peltz ("Peltz"), Marian A. Rupright ("Rupright"), and Palmer Home Mortgage, Inc. ("Palmer").  The Moores alleged seven claims in their complaint:  violation of the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601, *et seq.* (Count 1); violation of the Home Ownership and Equity Protection Act of 1994 ("HOEPA"), 15 U.S.C. §§ 1602(aa) and 1639 (Count 2); violation of the Real Estate Settlement Procedures Act of 1974 ("RESPA"), 12 U.S.C. § 2601, *et seq.* (Count 3); violation of the Michigan Consumer Protection Act ("MCPA"), M.C.L.A. § 445.901, *et seq.* (Count 4); violation of the Michigan Usury Statute, M.C.L.A. § 438.31, *et seq.* (Count 5); common law fraud (Count 6); and violation of the Michigan Credit Services Protection Act, M.C.L.A. § 445.1821, *et seq.* (Count 7).  Counts 3, 4, and 6 were asserted against all Defendants, Count 7 was asserted against Cycon, Peltz, Rupright, Romar, and Palmer, and Counts 1, 2, and 5 was asserted only against Cycon.

The Moores alleged that they had fallen behind in their payments on their residence and their lender had foreclosed on its mortgage.  Prior to the expiration of the foreclosure redemption period, the Moores received a letter from Peltz stating that he could obtain financing for them to keep them from losing their home in foreclosure.  The Moores met with Peltz and agreed to refinance through him.  Thereafter, Peltz contacted B & P, and B & P in turn contacted Cycon about whether it was interested in taking a mortgage on the Moores' property.  After reviewing the information on the property, Cycon agreed to provide the financing.  Although Peltz always represented to the Moores that the transaction would be a refinancing, Peltz structured the transaction as a sale of the property by the Moores to Cycon, with the Moores leasing the property back from Cycon.  Soon after the

closing on the refinancing, the Moores fell behind in their payments to Cycon, and they filed a Chapter 7 bankruptcy petition in the fall of 2003.  The Moores eventually retained their present counsel, who obtained an abandonment of the Moores' claim by the bankruptcy trustee on July 23, 2004.  A few months prior to that time, Cycon filed an action in the 60th District Court in Muskegon, Michigan, Case No. 04-045135-LT, to evict the Moores.  Following the abandonment by the trustee, the Moores' counsel sent a letter to Cycon notifying it that the Moores were exercising their right to rescind under the TILA.  The Moores filed this action after Cycon refused to honor the demand for rescission.

On March 31, 2005, the Court entered an Opinion and Order dismissing certain claims and certain Defendants.  Among other things, the Court dismissed all remaining claims against B & P and Count 3 against Cycon.  Prior to the issuance of the Opinion and Order, the Moores  agreed to dismiss all claims against Palmer and Counts 4 and 6 against B & P and Cycon.  Consequently, the only claims remaining after the Court's decision were Counts 1, 2, 5, and 7 against Cycon and Counts 3, 4, 6, and 7 against Peltz, Rupright, and Romar.  By Order dated April 12, 2005, the Court dismissed the claims against Romar, Peltz, and Rupright without prejudice, leaving only the Moores' claims against Cycon.  As a result of subsequent events, all cross claims and third party claims were dismissed, except Cycon's cross claims against B & P, which were subsequently recharacterized as third party claims.

On August 14, 2006, after the completion of discovery, the Court entered an Order granting the Moores' motion for partial summary judgment on Counts 1, 2, and 5 and denying Cycon's motion for summary judgment.  As part of its ruling, the Court concluded that the transaction between the Moores and Cycon was in fact a financing transaction rather than a sale and that Cycon

3

held an equitable lien on the property.  In a subsequent Order entered on February 9, 2007, the Court

granted in part and denied in part the Moores' and Cycon's motions for summary judgment regarding

damages.  In particular, the Court: (1) held that the Moores were not liable for the $25,237.85 paid

to B & P and Romar/Peltz; (2) the Moores were entitled to statutory damages pursuant to 15 U.S.C.

§ 1635(b); (3) the Moores were entitled to a rent credit of $6,706.66; (4) Cycon was entitled to

$6,462.27 on its claim for property taxes and insurance payments; and (5) the Moores were required

to tender $186,017.76 to Cycon to be entitled to rescission.

## II.  Discussion

Pursuant to 15 U.S.C. § 1640 (a)(3), a creditor is liable for, "in the case of any successful

action . . . , the costs of the action, together with a reasonable attorney's fee as determined by the

court."  Similarly, under the Michigan Usury Statute, a borrower who succeeds on a claim is

"entitled to recover his attorney fees and court costs from the seller, lender or assigns."  M.C.L.A.

§ 438.32.  In their motion, the Moores request a total fee award of $55,320.00, based upon 184.4

hours of work at the rate of $300.00 per hour.  The Moores also seek a total of $656.81 in costs and

expenses, which Cycon does not contest.

In determining a reasonable attorney's fee, the "lodestar" method is a proper starting point.

*See Payton v. New Century Mortgage Corp.*, No. 03 C 333, 03 C 703, 2004 WL 524693, at *2 (N.D.

Ill. Mar. 11, 2004); *Schwab v. Sears, Roebuck & Co.* (*In re Derienzo*), 282 B.R. 586, 591 (Bkrtcy.

M.D. Pa. 2002).   The "lodestar figure" is the product of the number of hours reasonably expended

on the litigation multiplied by a reasonable hourly rate.  *See Wayne v. Village of Sebring*, 36 F.3d

517, 531 (6th Cir. 1994) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S. Ct. 1933, 1939

(1983)).  Hours that are duplicative, excessive, or otherwise unnecessary should be excluded from

4

the initial fee calculation. *Hensley*, 461 U.S. at 434, 103 S. Ct. at 1939-40. After determining the

loadstar figure, a court should determine whether the fee should be adjusted in light of the results

obtained. *Id.* at 434, 103 S. Ct. at 1940. The Sixth Circuit has noted, however, that

> "a court should not reduce attorney fees based on a simple ratio of successful claims
> to claims raised. When claims are based on a common core of facts or are based on
> related legal theories, for the purpose of calculating attorney fees they should not be
> treated as distinct claims, and cost of litigating the related claims should not be
> reduced."

*Deja Vu v. Metro. Gov't of Nashville*, 421 F.3d 417, 423 (6th Cir. 2005) (quoting *Thurman v. Yellow*

*Freight Sys., Inc.*, 90 F.3d 1160, 1169 (6th Cir. 1996) (citation omitted)). The party seeking an

award of fees has the burden of proving that her request is reasonable. *See Perry v. Keulian*, No.

Civ. A. 96-1374, 1997 WL 459971, at *1 (E.D. Pa. July 25, 1997) (citing *Rode v. Dellarciprete*, 892

F.2d 1177, 1183 (3d Cir. 1990)).

A.    **Reasonable Hourly Rate**

The Court first considers the issue of a reasonable hourly rate. With regard to the hourly rate,

the Supreme Court has held that the rates to be used in calculating the lodestar are those rates

"prevailing in the community for similar services by lawyers of reasonably comparable skill,

experience, and reputation." *Blum v. Stenson*, 465 U.S. 886, 896 & n.11, 104 S. Ct. 1541, 1547 &

n.11 (1984). The reasonable hourly rate in the community may be established through proof of rates

charged in the community under similar circumstances as well as opinion evidence of reasonable

rates. *See United States ex rel. Educ. Career Dev., Inc. v. Cent. Fla. Reg'l Workforce Dev. Bd., Inc.*,

No. 6:04-CV-93-ORL-19DABC , 2007 WL 1601747, at *3 (M.D. Fla. June 1, 2007). Other relevant

sources include the attorney's actual billing rate and fee awards from prior cases. *See Payton v. New*

*Century Mortgage Corp.*, Nos. 03 C 333, 03 C 703, 2004 WL 524693, at *2 (N.D. Ill. Mar. 11,

2004).  Finally, a court may determine a reasonable rate based upon its own expertise and judgment.  *See Educ. Career Dev., Inc.*, 2007 WL 1601747, at *6.

As support for the requested hourly rate of $300, the Moores' counsel, Phillip C. Rogers, has submitted an affidavit describing his experience in handling litigation on behalf of plaintiffs under various consumer rights or protection laws in both federal and state court.  Mr. Rogers has practiced law for approximately twenty-five years.  He has been a solo practitioner for more than fifteen years, and for at least the last ten years has devoted his practice exclusively to representing consumers in consumer rights litigation.  Mr. Rogers has handled several consumer class action cases in this district and has been plaintiffs' counsel in numerous individual consumer cases in this district and, specifically before this Court.  Based upon the information in Mr. Rogers' affidavit and this Court's own experience, the Court notes that Mr. Rogers has substantial experience in TILA and other types of consumer rights litigation.

Mr. Rogers' hourly rate was $200 from 1998 through 2000; $225 in 2001 and 2002; $250 in 2003; $275 in 2004; and $300 from January 1, 2005, though the present.  In 1999, Judge Enslen found Mr. Rogers' rate of $200 to be fair and reasonable in the class action case of *Van Vels, et al. v. Premier Athletic Center of Plainfield, Inc.*, No. 1:97-CV-665.  In 2003, Judge Enslen found Mr. Rogers' rate of $225 to fair and reasonable in the class action case of *Daenzer v. Wayland Ford, Inc.*, No. 1:01-CV-133.  Mr. Rogers states that he is familiar with hourly rates of attorneys in the Grand Rapids area who perform work in consumers rights litigation and that such rates range from $275 to $325 per hour.

As additional support for the requested rate of $300, the Moores have submitted an affidavit from John E. Anding, a Grand Rapids attorney, who handles complex commercial and consumer

class action litigation and has acted as co-counsel in various cases with Mr. Rogers.  Like Mr.

Rogers, Mr. Anding states that the range of hourly rates in West Michigan for an attorney with Mr.

Rogers' level of experience in consumer rights litigation is $275 to $300 and that Mr. Rogers'

requested rate of $300 is reasonable.

Cycon disputes the reasonableness of a $300 rate.  Among other evidence, Cycon has

submitted an affidavit from Perry G. Pastula, a local attorney who practices almost exclusively in

the areas of commercial litigation and bankruptcy law.  Mr. Pastula states that the hourly rate in West

Michigan for an attorney with 20 to 25 years of experience in these areas is $175 to $225 per hour.

Cycon has also submitted an affidavit from Thomas R. Behm, a local attorney who has practiced in

the areas of complex commercial and personal injury litigation for approximately 20 years.  Mr.

Behm states that  the hourly rate for West Michigan attorneys with 20 to 25 years of experience in

the area of complex commercial litigation, including consumer rights litigation, would be $250 per

hour.

Apart from the affidavits of counsel, Cycon relies upon two surveys, the State Bar of

Michigan's 2003 "Economics of Law Practice Survey," which was released in early 2004, and a

more recent survey, the Michigan Lawyers Weekly "2006 Economics of Law Practice Monitor,"

released in December 2006.  The State Bar of Michigan survey lists the median hourly rates of

lawyers by size of firm, years of practice, area of practice, legal classification (i.e., sole practitioner,

equity partner, senior associate, etc.), and office location.  Cycon asserts that the following median

rates are pertinent to the determination of the reasonable hourly rate in this case:

| | |
|---|---|
| Size of Firm (# of Attorneys):  1 attorney | $150 |
| Years in Practice: 20-29 | $180 |
| Primary Field of Law:  Corporate/Business | $175 |
| General Practice | $150 |
| Litigation (not P/I) Plaintiff | $163 |

|                                           |       |
|-------------------------------------------|-------|
| Legal Classification:  Sole practitioner  | $150  |
| Office Location: Grand Rapids             | $175  |

*Economics of Law Practice* (2003) at 25-26.

Cycon asserts that the following information from the Lawyers Weekly survey is pertinent:

|                                                     | Median rate | 75th Percentile |
|-----------------------------------------------------|-------------|-----------------|
| Size of Firm: 1 attorney                            | $185        | $200            |
| Years in Practice: 20 to 24                         | $200        | $250            |
| Practice Class: Solo Practitioner                   | $180        | $200            |
| Primary Field of Law: Corporate/Business Law        | $225        | $250            |
| General Practice                                    | $175        | $200            |
| Trial Practice, not PI (General Civil)              | $200        | $250            |
| Office location: Grand Rapids/Western Michigan      | $195        | $250            |

*The 2006 Economics of Law Monitor* at 15-17.

Based upon the materials it has presented, Cycon contends that the prevailing rate in the local community for lawyers with similar experience to that of Mr. Rogers and practicing in the same or similar areas is no more than $200 to $250 per hour, although Cycon does not offer a specific rate that it believes the Court should apply.  Cycon also points out that although the Moores seek a fee award based upon a rate of $300 for all work, Mr. Rogers' rate was $300 only for work performed after January 1, 2005, and his rates for 2003 and 2004 were  $250 and $275, respectively.

Apart from the materials submitted by the parties in this case, the Court, through its own research, has found one prior decision from this district concerning an award of attorney fees in a TILA case.  In *Mourer v. Equicredit Corp. of America* (*In re Mourer*), 313 B.R. 701 (Bankr. W.D. Mich. 2004), the bankruptcy court awarded the plaintiffs fees based upon counsels' hourly rate of $200 per hour.  *See id.* at 707.  The Court knows from its own experience that the attorney in that case, like Mr. Rogers, is a Grand Rapids attorney who regularly appears in consumer rights cases in this district and before this Court.  More recently, Chief Judge Bell awarded fees to the same attorney

in *Conley v. Aggeler*, No. 1:05-CV-406 (W.D. Mich. Jan. 25, 2007) (docket no. 71), a case involving claims under the Credit Repair Organization Act, 15 U.S.C. § 1679 *et seq.*, and various Michigan statutes. Counsel's claimed hourly rate, which the defendant did not challenge and Judge Bell found to be reasonable, was $250. The only other reported decision that the Court has found from this district regarding attorney fees under a consumer rights statute is this Court's decision in *Gradisher v. Check Enforcement Unit, Inc.*, No. 1:00-CV-401, 2003 WL 187415 (W.D. Mich. Jan. 22, 2003), which involved a class action brought pursuant to the Fair Debt Collection Practices Act and its Michigan counterpart. The Court found that Plaintiffs' lead counsel's requested hourly rate of $300 was fair and reasonable. *See id.* at *3.

Based upon all of the evidence before it, as well as its own experience (the undersigned charged and was paid (if memory is correct) $225 per hour for commercial litigation in 1992), the Court concludes that $300 per hour is a reasonable rate and is reflective of the rates charged in the community for similar services by a lawyer with Mr. Rogers' experience and reputation. The Sixth Circuit has noted, in enacting attorney fee provisions such as that under the TILA, "Congress did not intend that lawyers, already a relatively well off professional class, receive excess compensation or incentives beyond the amount necessary to cause competent legal work to be performed in these fields." *Coulter v. State of Tenn.*, 805 F.2d 146, 148-49 (6th Cir. 1986) (citing S. Rep. No. 94-1011, p.6). An hourly rate of $300 meets this test in this case.

If Mr. Rogers were not as experienced in this area of litigation, the determination as to a reasonable hourly rate might be difficult. But this Court knows from experience that this area of litigation can be handled much more efficiently by a person with Mr. Rogers' experience. Furthermore, average rates, whether mean or median, are not very helpful in determining prevailing

9

rates for efficient lawyers – the average depth of a river does not say anything about whether one could drown in its middle.

### B.    Hours Reasonably Expended

The Court's next task is to determine the number of hours reasonably spent on the litigation. Mr. Rogers states that he spent 184.4 hours on the litigation.  On its face, this number does not appear to be unreasonable, given the nature of the litigation.   However, Cycon argues that the number of hours should be reduced for a number of reasons.

First, it contends that the 12.3 hours billed by Mr. Rogers prior to September 2004 are for work either in Case No. 04-045135-LT (the state court eviction proceeding) or in the Moores' bankruptcy case, neither of which relate to this case.  It further contends that .7 hours billed after September 2004 were for Case No. 04-045135-LT and that all 13 hours should be excluded as being unrelated.  Alternatively, Cycon asserts that 5.5 hours relating specifically to Case No. 04-045135 and 2.5 hours relating specifically to the bankruptcy case should be excluded.

The Court rejects Cycon's claim that all hours incurred prior to September 2004 should be excluded.  Attorney fees for pre-complaint investigation and analysis are recoverable, *see Kuhn v. Unumprovident Corp.*, No. CV 04-368 TUC DCB, 2007 WL 446359, at *3 (D. Ariz. Feb. 7, 2007); *Lake v. Schoharie County Comm'r of Soc. Servs.*, No. 9:01-CV-1284 (NAM/DEP), 2006 WL 1891141, at *8 (N.D.N.Y. May 16, 2006), and some of the billing entries for work before September 2004 relate to investigation of the claims asserted against Cycon in this case.  That being said, the Court agrees with Cycon that a reduction is warranted for the time spent on Case No. 04-04515-LT, which was not related to the instant case.  This work totals 4.9 hours and includes work performed on 4/27/04; 5/4/04; 5/10/04; 5/18/04; 5/21/04; 6/25/05; and 7/26/05.  The Court will not deduct the

.1 hour on 12/12/03 or the .3 hour on 11/30/04 because it is not clear to the Court that the work was unrelated, or of no benefit, to this case.  The Court also will not exclude the time relating to the bankruptcy case.  Several of the entries cited by Cycon relate to investigation of the claims in this case, such as the December 5, 2003, telephone conference with the Moores' bankruptcy attorney regarding the details of the transaction between the Moores and Cycon.  Furthermore, several of the entries concern Mr. Rogers' attempts to have the bankruptcy trustee abandon the Moores' claim – a necessary requisite to the filing of this action.  Finally, the Court rejects Cycon's request to reduce the remaining pre-September 2004 entries by some percentage upon the ground that they *may* relate to work performed in the other cases.  The Court has reviewed all of those entries and concludes that some hours should be excluded as not necessary to this case or unrelated to Cycon: .6 hour on 12/4/03 (calls to the Muskegon County Sheriff Department and the Michigan Office of Financial and Insurance Services regarding mortgage fraud); .2 hour on 12/8/03 (letter to Peltz re: ceasing communication with the Moores); and .5 hour on 12/9/03 (telephone call to and review e-mail from OFIS re: complaints against Palmer and B & P).  Thus, the Court will deduct 6.2 hours as unrelated or not necessary to this case.

Second, Cycon contends that it should not be held responsible for hours related to unsuccessful claims against other parties.  For example, it notes that B & P moved for dismissal pursuant to Rule 12(b)(6), that the Moores stipulated to the dismissal of Counts 4 and 6, and that B & P ultimately prevailed on its motion to dismiss Count 3.  Cycon contends that 20.7 hours are attributable to the Moores' claims against B & P.  The Court agrees to a limited extent.  That is, Cycon should not be responsible for hours relating solely to the Moores' claims against B & P.  Those claims were dismissed, either by stipulation or by order, as of March 31, 2005.  After that

11

time, B & P remained in the case solely because Cycon asserted its third party claims against B & P.  In other words, had Cycon dismissed its claims against B & P (which the Court ultimately dismissed), there would have been no reason for Mr. Rogers to do any work relating to B & P.  The fact that Mr. Rogers spent some time speaking to or corresponding with B & P's counsel regarding various matters in the case, such as the joint status report, a settlement conference, or appraisals that related to the Moores' claims against Cycon, does not mean that the work was unconnected with the claims against Cycon.[1]  Therefore, the Court will exclude 13.2 hours for work relating to the claims against B & P performed on the following days: 12/6/04; 12/16/04; 12/20/04; 1/10/05; 1/18/05/ 2/15/05; 2/22/05; 2/25/05; 3/3/05; 3/10/05; and 3/16/05.[2]

Similarly, Cycon contends that it is not responsible for 4 hours of work relating to the Moores' claims against Palmer.  The Court will exclude 3 hours for work relating to the claims against Palmer, performed on the following days: 12/3/04; 12/20/04; 12/30/04; 1/11/05; 1/18/05; 1/31/05; 2/8/05; and 3/9/05.[3]  In addition, Cycon contends that it is not responsible for 3.3 hours of work relating to Peltz, Rupright, Romar, and Third-Party Defendant Sundrla (Palmer filed a third party complaint against Sundrla and ultimately dismissed its claims against Sundrla).  The Court will

---

[1]The Court rejects Cycon's assertion that the Moores are not entitled to an award for time spent reviewing the filings relating to Cycon's third-party claims against B & P.  It would have been unreasonable for Mr. Rogers to assume that those filings had nothing to do with his clients' claims against Cycon.

[2]The Court has already excluded the time for 12/4/03 and 12/9/03.  The Court will not exclude the time for 2/16/05 because Mr. Rogers spent the 1.4 hours preparing an affidavit which provided background for the case and was applicable to all motions, including Cycon's.

[3]The hours that Cycon has identified for 12/4/03, 12/9/03, and 2/22/05 have already been excluded.

exclude a total of 1.9 hours for work performed relating to these parties on 11/29/04; 2/9/05; 2/22/05; 2/28/05; 3/17/05; 3/18/05; 3/31/05; 4/21/05; and 5/5/05.[4]

Finally, Cycon requests a further reduction to account for the fact that Mr. Rogers spent additional time on claims and parties that were ultimately dismissed from the case.  While the Court has already excluded some of the time that Cycon cites as being unnecessary or unwarranted, the Court agrees that a small reduction is appropriate to account for the fact that the Moores brought claims against other parties that were ultimately dismissed.  Because the time excluded above does not fully take into account additional time that Mr. Rogers spent on unsuccessful claims against those Defendants, the Court finds it appropriate to reduce the number of hours, net of the exclusions set forth above, by 10 percent.

In sum, the Court concludes that 144.1 (184.4 hours - 24.3 hours = 160.1 - 10% (16 hours)) were reasonably incurred in the prosecution of the Moores' claims against Cycon.

## C.    Adjustment to Lodestar

The lodestar amount, based upon the above determinations, is $43,230.00 (144.1 hours x $300/hr.).  This figure is presumed to be a reasonable fee.  *See City of Riverside v. Rivera*, 477 U.S. 561, 568, 106 S. Ct. 2686, 2691 (1986).   Cycon contends that an additional downward adjustment is warranted because of the Moores' limited success.  Cycon points out that the Moores prevailed only on Counts 1, 2, and 5, while Cycon prevailed on its motion to dismiss on Counts 3, 4, and 6 (Counts 4 and 6 were actually dismissed upon stipulation of the parties).  Cycon further points out

---

[4]The Court has already excluded the hours Cycon has identified for 12/4/03, 12/8/03, 12/30/04, and 1/11/05. The Court will not exclude the .2 hour on 12/8/03 for a telephone conference with Peltz regarding the transaction because such information related to the case against Cycon.  The Court will also not exclude the time on 11/3/05 and 11/9/05 regarding contact information for Peltz, which may have been sought for a deposition in connection with the claims against Cycon.

13

that while Plaintiffs were awarded title to the property, Cycon was awarded an equitable mortgage, that Cycon prevailed on its claim for property taxes and insurance, and that Cycon was able to recover most of its investment in the property.  These arguments ignore the realities of the case.  While the Moores did not prevail on every claim they asserted, as noted above, the fact that a plaintiff does not prevail on one or more claims that arise out of the same common core of facts as successful claims does not warrant a reduction in fees.  The TILA claims were the centerpiece of the Moores' claims in this case, including the lack of required disclosures and failure to honor the request for rescission.  The Moores recovered the maximum statutory damages on those claims and obtained a conditional order for rescission.  The fact that the Moores did not prevail on other claims does not detract from their success.  Similarly, the fact that the Court awarded Cycon an equitable mortgage does not warrant a reduction.  The Moores always claimed that the transaction was really a loan and that Cycon had an equitable mortgage on the property rather than an ownership interest.  Cycon never requested an equitable mortgage and, in fact, defended the equitable mortgage claim throughout this case and continues to do so on appeal.  Finally, the Moores were successful in having the loan balance reduced by the amounts paid to B & P and Romar/Peltz.  Accordingly, there is no basis for an additional adjustment.

### III.  Conclusion

For the foregoing reasons, the Court will grant the Moores' motion for an award of costs/expenses and attorney's fees in part.  The Court will award the Moores $43,230.00 in attorney's fees and $656.81 in costs.

An Order consistent with this Opinion will be entered.

Dated:  August 10, 2007                              /s/ Gordon J. Quist
                                                    GORDON J. QUIST
                                                    UNITED STATES DISTRICT JUDGE